# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCES LAGUARDIA,** | : | |
| ***individually and as Executrix*** | | |
| ***of the Estate of James Vincent*** | : | **CIVIL ACTION NO. 3:15-1475** |
| ***LaGuardia, Deceased,*** | | |
| | : | **(JUDGE MANNION)** |
| **Plaintiff** | | |
| | : | |
| **v.** | | |
| | : | |
| **ROSS TOWNSHIP,** ***et al.,*** | | |
| | : | |
| **Defendants** | | |
| | : | |

## <u>MEMORANDUM</u>

Currently before the court is a motion for reconsideration filed by the plaintiff, Frances LaGuardia. (Doc. 62). The plaintiff seeks reconsideration of the court's August 29, 2016 Memorandum and Order, (Docs. 60–61), denying the plaintiff's motion for leave of court to file an amended complaint, (Doc. 55), and granting the defendants' various motions to dismiss, (Docs. 18, 22, 28). These defendants include: Ross Township; Ross Township Supervisors, Howard Beers ("Supervisor Beers"), Russell Kresge, Jr. ("Supervisor Kresge"), and Tina Drake ("Supervisor Drake") (collectively, the "Ross Township Supervisors"); Ross Township Solicitor John Dunn ("Solicitor Dunn"); and Sheriff of Monroe County, Pennsylvania, Todd Martin ("Sheriff Martin"). The Ross Township Supervisors and Solicitor Dunn were sued in both their individual and official capacities; Sheriff Martin was sued in his

individual capacity alone. In its Memorandum and Order, the court dismissed all claims against all defendants in the plaintiff's original and proposed amended complaint. For the reasons stated below, the plaintiff's motion for reconsideration of the court's August 29, 2016 decision is **DENIED**.

## I.    BACKGROUND

### A.    The August 5, 2013 Ross Township Meeting

As detailed in the court's previous memorandum, great tragedy befell Ross Township on August 5, 2013. On that day, township resident Rockne Newell ("Newell") opened fire during a monthly meeting held by the Ross Township Supervisors. Newell's property had been condemned and sold by Ross Township eleven days prior to the shooting, on July 25, 2013, in order to satisfy a $8,434.15 judgment the township obtained from the Monroe County Court of Common Pleas due to Newell's ongoing zoning and sewage violations. Newell's reaction to the township's actions was to engage in a deadly mass shooting at the August 5, 2013 township meeting, resulting in the tragic dead of the plaintiff's husband, James Vincent LaGuardia, in addition to the deaths of two other meeting attendees, Gerald J. Kozic and David Fleetwood.

On July 29, 2015, individually and as executor of her husband's estate, the plaintiff filed the current action. (Doc. 1). The plaintiff alleged that her

husband was deprived of his due process rights under the Fourteenth Amendment of the United States Constitution and her action was filed pursuant to Title 42, Section 1983 of the United States Code. The plaintiff's complaint utilized Pennsylvania's wrongful death and survival statute as the mechanism for recovery of the alleged civil rights violations committed against the plaintiff's deceased husband.

The plaintiff alleged that, over a period of approximately 23 years, the Ross Township Supervisors and Solicitor Dunn engaged in a "substantial and multi-faceted campaign" against Newell. (Doc. 1, at ¶15). These actions, coupled with the defendants' "zealous over use of legal process" against Newell, were alleged to create the opportunity for the danger at the township meeting on August 5, 2013. (*Id*. at ¶41). The plaintiff alleged that the Ross Township Supervisors used their positions for "personal gain and benefit," as opposed to the best interests of the township. (*Id*. at ¶17). An alleged motivation for this conduct was Supervisor Kresge's desire to purchase Newell's property and add it to his own 61.98 acre adjacent property. (*See id*. at ¶¶18–21). These motives led to the "selective" enforcement of zoning ordinances against Newell and a campaign against Newell for zoning and sewer regulations, which included a referral to the Federal Emergency Management Agency ("FEMA") that Newell had made a fraudulent claim for money to finance a project on his property. (*Id*. at ¶¶22–25). It was also

alleged that Ross Township, the Ross Township Supervisors, and Solicitor Dunn knew this conduct "was provoking or likely to invoke violence from Rockne Newell." (*Id*. at ¶49(d)).

The plaintiff also claimed that Ross Township, the Ross Township Supervisors, and Solicitor Dunn consciously disregarded her husband's civil rights by failing to warn attendees, secure, or take action at the August 5, 2013 meeting despite their alleged knowledge of Newell's propensity for violence. (*Id*. at ¶49). This allegation was based on Newell's interactions with others in the community and Newell's father's statements to sheriff deputies that his son was threatening violence due to the township's actions. (*See id.* at ¶¶27–28). In particular, Newell's father allegedly warned sheriff deputies that people would "die" due to the township's actions in proceeding with the sale of Newell's property. (*Id*. at ¶28).

Distinct from the claims against Ross Township, the Ross Township Supervisors, and Solicitor Dunn, the plaintiff's claim against Sheriff Martin was based, primarily, upon Sheriff Martin's failure to take action before the township meeting or secure the township meeting, despite Sheriff Martin's purported knowledge of Newell's dangerous propensities and threats of violence. (*See id.* at ¶56). However, included in the plaintiff's complaint was an allegation that Sheriff Martin consciously disregarded the plaintiff's and her

husband's civil rights "in exercising state authority that left [the] [p]laintiff's decedent vulnerable to harm by Newell." (*Id.* at ¶56(h)).

### B.    The Parties' Underlying Motions

On September 9, 2015, Sheriff Martin filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 18). Sheriff Martin sought dismissal of the Section 1983 claim against him in his individual capacity primarily based upon the Supreme Court decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) and the plaintiff's failure to allege an exception to the principles set forth in *DeShane*y. Specifically, Sheriff Martin argued that the plaintiff failed to adequately plead the state-created danger exception to *DeShaney*. In the alternative, Sheriff Martin alleged that he had no authority to act at the August 5, 2013 township meeting and that he either had absolute or qualified immunity from suit when conducting the sheriff's sale of Newell's property. In the event the court found a valid Section 1983 claim, Sheriff Martin also argued that Pennsylvania's wrongful death statute, 42 Pa. Cons. Stat. Ann. §8301, could not provide a remedy for violations of Section 1983. He argued that, at a minimum, the wrongful death count should be dismissed.

On September 24, 2015, Ross Township and the Ross Township Supervisors filed a motion to dismiss the plaintiff's complaint. (*See* Doc. 22). This motion made the same argument as Sheriff Martin's motion, failure to

state a claim using the state-created danger exception to *DeShaney*. The motion also construed the plaintiff's complaint to include a possible state law claim of negligence. Ross Township and the Ross Township Supervisors sought to dismiss any potential state tort action by claiming immunity under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§8541–42.

Lastly, on October 16, 2015, Solicitor Dunn filed his own Rule 12(b)(6) motion to dismiss. (*See* Doc. 28). In addition to asserting the *DeShaney* defense, Solicitor Dunn asserted that he was not a state actor subject to Section 1986 or, in the alternative, if he was a state actor, that his actions were shielded by the good faith defense. Like Sheriff Martin, Solicitor Dunn also alleged that, in the event the court found a valid Section 1983 claim, Pennsylvania's wrongful death statute did not provide a remedy for violations of Section 1983 and that, at a minimum, the wrongful death count should be dismissed.

In addition to responding to all the defendants' motions to dismiss, on May 13, 2016, the plaintiff filed a motion for leave to file an amended complaint, (Doc. 55), as the deadline for amended pleading had already passed. The overall substance of the proposed amended complaint was the same as the original complaint. The proposed amended complaint did not include any new claims or causes of action. Instead, it added several new

6

factual allegations in an effort to show that the defendants knew of Newell's

propensity for violence prior to the August 5, 2013 shooting. These included

the following factual accounts:

1.   An alleged conversation between Newell and Solicitor Dunn after a court proceeding at the Monroe County Courthouse where Newell took a bullet from his coat pocket, showed it to Solicitor Dunn, and warned Solicitor Dunn that he would have shot him if Solicitor Dunn had been successful in taking the property;

2.   An alleged conversation between Newell and Supervisor Kresge at a local diner where Newell said to Supervisor Kresge, "You know me and you know my family. You keep this up, and we're going to meet somewhere, me and you. When we're done, it will be only me";

3.   An alleged incident between Newell and a code enforcement officer at Ross Township that involved Newell doing the following: revealing a handgun to the officer; removing an automatic weapon from his vehicle and spraying bullets into the trees on his property; and threatening violence if the officer ever returned to the property;

4.   An allegation that a different code enforcement officer from Ross Township refused to deliver an enforcement notice to Newell and voluntarily left his position with the township because he believed that no one should mess with the Newells;

5.   An alleged conversation between Newell and Sheriff Martin where Newell advised Sheriff Martin that, if Sheriff Martin attempted to come to or take Newell's property, Sheriff Martin should shoot Newell because Newell did not want to shoot him.

(Doc. 55-1, at ¶¶28–31, 34). These new allegations were added as a result

of an interview with Newell on April 28, 2016. The plaintiff was unable to

obtain this information earlier due to Newell's movement through the state

correctional system and the plaintiff's counsel's inability to contact Newell's

criminal defense attorney. All of the defendants opposed the plaintiff's request to file an amended pleading, arguing that any amendment would be futile in light of the legal arguments presented in the motions to dismiss.

On October 19, 2015, before the plaintiff sought leave to file an amended complaint, the court agreed to consolidate discovery in the matter with matters filed on behalf of other attendees at the township meeting, including those filed by the wife of decedent Gerard J. Kozic and by husband and wife, Patricia A. Baeur and Richard A. Bauer.[1] (*See* Doc. 30). Thereafter, while the defendants' motions were still pending, the court continued scheduling a joint case management plan. (*See* Docs. 46, 53). Originally, the court set the deadline for amended pleadings from the plaintiff to February 1, 2016 and set the deadline for fact discovery to June 1, 2016. (*See* Doc. 46). On May 2, 2016, the deadline for fact discovery was extended to October 1, 2016. (*See* Doc. 53). Thus, discovery continued up until the court's August 29, 2016 decision.

### C.   The Court's August 29, 2016 Memorandum and Order

On August 29, 2016 the court determined that the August 5, 2013 massacre fell within the principles espoused in *DeShaney* and that the plaintiff had not alleged a viable state-created danger claim as an exception to

---

[1] *Goss-Kozic v. Ross Township*, Civ. No. 3:15-cv-01479-MEM (M.D. Pa.); *Bauer v. Ross Township*, Civ. No. 3:15-cv-01523-MEM (M.D. Pa.).

*DeShaney*. In *DeShaney*, the Supreme Court of the United States held that the Fourteenth Amendment does not impose an affirmative obligation upon a state to protect its citizens from the violent actions of private actors. *DeShaney v. Winnebago County Dept's of Soc. Servs.*, 489 U.S. 189, 195–96 (1989). One exception to this holding is the state-created danger exception, which is the theory that the plaintiff's complaint was premised upon. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). The state-created danger exception requires that the plaintiff establish four elements:

1.  The harm ultimately caused was foreseeable and fairly direct;

2.  The state actor acted in willful disregard for the safety of the plaintiff, otherwise stated as acting with a degree of culpability that shocks the conscience;

3.  There existed some relationship between the state and the plaintiff making the plaintiff a foreseeable victim or a member of a discrete class of persons subject to harm due to the state's actions; and

4.  The state actor affirmatively used his/her authority to create an opportunity for danger that otherwise would not have existed for the third party's crime to occur, making the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, -- F.3d --, 2016 WL 4608133, at *3 (3d. Cir. Sept. 6, 2016) (citing *Bright v. Westmoreland*, 443 F.3d 276, 281 (3d Cir. 2006)); *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996).

In its memorandum, the court addressed the fourth element of the state-created danger theory first. The court then separated the unconstitutional conduct alleged in the plaintiff's complaint into two categories, a category of nonfeasance based on the defendants' failure to secure the meeting or warn the meeting attendees of Newell's dangerous propensities and the defendants' affirmative conduct or malfeasance in pursuing legal action against Newell. The court went on to explain that those allegations predicated upon nonfeasance and the defendants' failure to act, warn, or secure the township meeting could not form the basis of a valid state-created danger claim.

Addressing the allegations relating to the defendants' affirmative actions in pursuing legal means against Newell, the court found that those actions did not create the opportunity for the alleged harm and that to find such would involve a great leap in logic. The court therefore found that the plaintiff had failed to establish the fourth element of the exception. Turning to the first element of the state-created danger theory, the court determined that Newell's criminal actions on August 5, 2013 were not foreseeable and that the defendants' actions did not directly lead to Newell's homicidal attack. Addressing the second element, the court determined that the defendants did not act with deliberate indifference or exhibit conscious shocking behavior. Lastly, the court determined that, as required by the third element, Mr.

LaGuardia was not alleged to be a member of a discreet class of persons subject to harm due to the defendants' behavior.

Because the plaintiff had failed to establish a valid Section 1983 claim, the court did not address whether Pennsylvania's wrongful death statute was an appropriate mechanism for remedies under Section 1983. The court also found that any amendment to the complaint would be futile and, therefore, denied the plaintiff's request to amend her complaint.[2] The plaintiff now seeks reconsideration of the court's August 29, 2016 Memorandum and Order dismissing the Section 1983 claim brought on behalf of her husband. She brings her motion pursuant to Federal Rule of Civil Procedure 59(e) or, in the alternative, Federal Rule of Civil Procedure 60(b)(2).[3]

## II.   LEGAL STANDARDS

Rule 59(e) provides the procedural mechanism for altering or amending a judgment that has been entered. It may be used to seek remediation for manifest errors of law or fact or to present newly discovered evidence which,

---

[2] In an abundance of caution, the court also dismissed any state law claims the plaintiff may have attempted to include in her complaint. The court dismissed these claims on grounds of immunity under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §8541–42, and based on the plaintiff's failure to plead a cognizable tort under Pennsylvania law.

[3] The plaintiff has also appealed the court's August 29, 2016 decision and that appeal has been stayed pending this decision. (*See* Docs. 67–68).

if discovered previously, might have affected the court's decision. *United States el rel. Schumann v. Astrazeneca Pharmaceuticals, L.P.*, 769 F.3d 837, 848 (3d Cir. 2014) (citing *Max's Seafood Café v. Quineros*, 176 F.3d 669, 677 (3d Cir. 1999)); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). However, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus. Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Reconsideration is generally appropriate in instances where the court has "misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning, but of apprehension." *York Int'l Corp. v. Liberty Mut. Ins. Co.*, 140 F. Supp. 3d 357, 360–61 (3d Cir. 2015) (quoting *Rohrbach v. AT & T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995)). It may not be used as

a means to reargue unsuccessful theories that were presented to the court in the context of the matter previously decided "or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." *Id.* at 361 (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).

Rule 60(b) provides a list of six enumerated grounds that would allow a party to obtain relief from a final judgment, order, or proceeding. One of these grounds includes "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). The Rule 60(b)(2) standard "requires that 'the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of trial.'" *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 309 (3d Cir. 2001) (quoting *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995)).

Normally, the standards that govern motions under Rule 59 and Rule 60(b) are similar. *Compass Tech., Inc.*, 71 F.3d at 1130. However, in this instance, it is clear that the standard under Rule 60(b)(2) requires a trial and, thus, this rule is not applicable to the plaintiff's instant motion. It is the "function of the motion, and not the caption, [that] dictates which Rule is

applicable." *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). The court therefore proceeds under Rule 59(e).

In addition to the Rule 59(e) standard set forth above, the standard of review when reconsidering the parties' previous motions relates back to the standards applicable to the underlying decision. *York Int'l Corp.*, 140 F. Supp. 3d at 361. Accordingly, when a motion for reconsideration challenges the district court's decision to grant a motion to dismiss and deny a motion for leave to amend a complaint, the analysis on reconsideration is guided by the standard provided by Federal Rule of Civil Procedure 12 and Federal Rule of Civil Procedure 15.

## III.   DISCUSSION

The plaintiff's motion is based on evidence that was uncovered as the parties engaged in ongoing fact discovery. This evidence is not truly "new" in the sense that it puts the defendants on notice of allegations different than those in the original or amended complaint. Nor does this new evidence change the applicable plausibility analysis under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). As such, the plaintiff's new evidence does not change the court's ultimate conclusion under Rule 12(b)(6) or Rule 15.

## A. The Plaintiff's Newly Discovered Evidence

The plaintiff's new evidence offered in support of her motion includes, and is summarized, as follows:

1.  Statements made by Manuel Anthony Pagan ("Pagan")[4] to Pennsylvania police that when Pagan served Newell with papers on June 8, 2013, Newell had a "short fuse and . . . went ballistic upon service of the documents" to such a degree that Pagan called Solicitor Dunn "to report that Newell was about to explode";

2.  Deposition testimony from Newell's father, Lyndon Newell ("Pete"), confirming that he was concerned about Newell's behavior before the August 5, 2013 incident and that he did, in fact, report to sheriff deputies that someone would die due to the township's actions;

3.  Statements made by Earl Kresge, Jr. to Pennsylvania police that Newell had told Ross Township how he felt about the township's actions prior to August 5, 2013;

4.  Deposition testimony from Michael B. Kaspszyk, Esquire ("Attorney Kaspszyk") about a conversation he had with Newell where Newell indicated that he would have to take the law into his own hands due to the legal proceedings against him[5] and

---

[4] It is unclear what role Michael Anthony Pagan played in the underlying incident. The exhibits provided by the plaintiff suggest that he is a process server who was hired by Solicitor Dunn to serve papers before the execution sale of Newell's property. In his deposition testimony, Sheriff Martin denied knowing Michael Anthony Pagan and denied that any such person worked as a deputy in the sheriff's office. (*See* Doc. 62-6 at 60, 65).

[5] Michael B. Kaspszyk, Esquire was representing nearby Eldred Township in a proceeding at the Monroe County Courthouse at the same time that Newell was scheduled to appear in a proceeding initiated against him by Ross Township. After the proceeding, Attorney Kaspszyk alleged that he was approached by Newell who was seeking representation and it is at this time that Newell allegedly commented on needing to take the law into his own

Attorney Kaspszyk's subsequent decision to tell Solicitor Dunn that Newell appeared "a bit unhinged";

5. Deposition testimony from Linda Goss-Kozic, who was at the township meeting at the time of the shooting, that she noticed the Ross Township Supervisors and Solicitor Dunn nervously and fearfully watching the door during the meeting as if looking for something or someone to appear;

6. Deposition testimony from Sheriff Martin acknowledging that Newell acted like "Dr. Jekyll and Mr. Hyde" and acknowledging that Newell had made previous threats to sheriff deputies;

7. Deposition testimony from zoning officer John Kochis that Supervisor Kresge described Newell as "a nut" and that one magisterial district judge would not take a case involving Newell due to his reputation;

8. Deposition testimony from Newell's aunt, Monica Pilas, regarding Newell's poor mental health as she perceived it and her opinion that Newell would not have engaged in the mass shooting if the township had not harassed him;

9. Deposition testimony from Supervisor Kresge that he did not want Newell around, did not like Newell's unkept appearance, did not like the way Newell lived or maintained his property, and testimony that the township had not executed on a judgment or forced a sheriff's sale for any other resident;

10. Deposition testimony from Supervisor Beers's ex-wife, Marsha Beers, that the actions of the Ross Township Supervisors in intimidating, badgering, and coercing Newell caused Newell to "snap";

11. Deposition testimony from Supervisor Drake indicating that Ross Township had obtained a judgment against one other resident but never proceeded to sheriff's sale in that instance; and

12. Deposition testimony from Supervisor Beers regarding the various legal actions brought against Newell, including Supervisor Beers's

hands. (*See* Doc. 62-4 at 5, 7–8, 11).

> decision to call FEMA and send a letter to Pennsylvania Senator
> Patrick Toomey about a possible fraudulent payment of money to
> Newell from FEMA.

(*See* Doc. 62, at ¶17). Most of the evidence offered by the plaintiff attempts to show that the defendants' knew that Newell might be dangerous prior to August 5, 2013. The evidence also affirms some of the protracted legal battle that Ross Township had with Newell. This new evidence does not, however, change the court's ultimate conclusion as provided in its August 29, 2016 Memorandum and Order.

### B. Rule 12(b)(6) and Rule 15

The plaintiff, by presenting a myriad of additional facts, suggests that this court's August 29, 2016 decision was premised on the insufficiency of the amount of facts alleged in the complaint and proposed amended complaint. However, a complaint need only set forth its jurisdictional grounds, "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Id*. at 555. This requirement "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. at 556.

Rule 15 allows a party to amend its pleading after the time for amendment has expired. Although the rule permitting amendment is more liberal, amendment is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indent.*, 151 F.R.D. 570, 574 (E.D. Pa.1993). Leave to amend should not be granted where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Similar to the Rule 12(b)(6) standard, futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

The court dismissed the plaintiff's action not based upon the amount of facts alleged, but based upon whether those that were alleged could plausibly provide relief as required by *Twombly*. This same analysis applied to the court's finding of futility in allowing the plaintiff to amend her original complaint. Ultimately, the court found that those facts alleged in the complaint and proposed amended complaint could not provide relief. The evidence provided now is merely cumulative of those facts alleged in the plaintiff's complaint and proposed amended complaint. This new evidence, therefore,

does not change the court's previous conclusion that the plaintiff failed to state a claim under Section 1983 and that amendment would be futile.

The statements made to police by Pagan and Earl Kresge, Jr. and the deposition testimonies of Newell's father, Attorney Kaspszyk, Linda Goss-Kozik, Sheriff Martin, John Kochis, Monica Pilas, and Marsha Beers are currently offered to suggest that the defendants knew of Newell's dangerous propensities. These factual incidents merely add to the facts offered in the plaintiff's proposed amended complaint. As detailed above, in her proposed amended complaint, the plaintiff sought to include the following: (1) an incident between Newell and Solicitor Dunn where Newell threatened violence; (2) threatening statements Newell made to Supervisor Kresge at a local diner; (3) an interaction between Newell and John Kochis where Newell implicitly threatened violence by spraying bullets into the trees on his property; (4) statements made by a code enforcement officer that no one should mess with the Newells; and (5) threatening statements Newell made to Sheriff Martin. (*See* Doc. 55-1, at ¶¶28–31, 34). While the additional statements and deposition testimonies offered now differ in form, the substance and intention behind these facts remain the same—an attempt to show that the defendants' knew Newell was dangerous or had a propensity for violent behavior. This new evidence is not new in the sense that it puts the defendants on notice of an allegation that they were not on notice of before.

Similarly, the deposition testimonies of Supervisor Kresge, Supervisor Beers, and Supervisor Drake reaffirm the various legal actions taken against Newell and the alleged motivations behind those actions. Particularly, it reaffirms the allegations that the Ross Township Supervisors "pursu[ed] legal actions for violations of local zoning and sewer regulations" and "pursu[ed] various violations against Newell for infractions that were ignored against other owners," among other things. (Doc. 1, at ¶¶16(b), (e)). The deposition testimony of Newell's father reaffirms the plaintiff's allegation that the township's actions were motivated, in part, by Supervisor's Kresge's desire to purchase Newell's property. (*Compare* Doc. 1, at ¶¶18–20, *with,* Doc. 62-2, at 20–22). In addition, Supervisor Kresge's deposition testimony reaffirms the plaintiff's allegation that Supervisor Kresge did not like the way Newell maintained himself and/or his property. (*Compare* Doc. 1, at ¶21, *with*, Doc. 62-9, at 52–53, 76). Again, this new evidence is not new in the sense that it puts the defendants on notice of allegations that they were not on notice of before.

### C.    The Plaintiff's Failure to State a Valid Section 1983 Claim

The plaintiff's cumulation of additional evidence also does not change the court's ultimate conclusion under *Twombly's* plausibility and futility standard for stating a valid claim. As stated above, the state-created danger

exception to *DeShaney* requires that the plaintiff establish the following four elements:

1. The harm ultimately caused was foreseeable and fairly direct;

2. The state actor acted in willful disregard for the safety of the plaintiff, otherwise stated as acting with a degree of culpability that shocks the conscience;

3. There existed some relationship between the state and the plaintiff making the plaintiff a foreseeable victim or a member of a discrete class of persons subject to harm due to the state's actions; and

4. The state actor affirmatively used his/her authority to create an opportunity for danger that otherwise would not have existed for the third party's crime to occur, making the citizen more vulnerable to danger than had the state not acted at all.

*L.R.*, -- F.3d --, 2016 WL 4608133, at *3; *Kneipp*, 95 F.3d at 1208. In addition, it is well established that under the fourth prong the plaintiff must sufficiently plead that "a state actor *affirmatively* used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281 (emphasis added).

Thus, to the extent the plaintiff's new evidence is offered to show that the defendants' should have acted in light of their knowledge of Newell's dangerous propensities, the plaintiff's argument must fail a second time. As further explained in this court's August 29, 2016 Memorandum, the defendants' failures to act do not state a cognizable Section 1983 claim. *See*

*Walter v. Pike County*, 544 F.3d 182, 194–95 (3d Cir. 2008). As explained by the Supreme Court in *DeShaney*, the Due Process Clause of the Fourteenth Amendment was intended to "protect the people from the State, not to ensure that the State protected them from each other." 489 U.S. at 196. The state-created danger exception is limited to a set of facts alleging affirmative conduct on the part of the state actor. Thus, the defendants' failures to act can never set forth a valid Section 1983 claim. This conclusion remains true despite the defendants' knowledge that Newell was exhibiting threatening behavior towards various individuals and despite the plaintiff's offering of additional evidence. *See id.* No amendment can save this claim.

To the extent the new evidence is offered to show that the defendants' use of legal process against Newell sets forth a viable Section 1983 claim, this argument must also fail a second time. The plaintiff attempts to reargue the unsuccessful theory asserted in defense of the defendants' motions to dismiss. Instead of addressing each element as it did in its August 29, 2016 Memorandum, the court focuses on the third element of the state-created danger exception and finds that, even after considering the plaintiff's newly discovered evidence, the plaintiff's claim must fail yet again.

The third element of the state-created danger theory requires that a plaintiff adequately plead "some relationship . . . between the state and the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 242 (3d Cir. 2008).

The plaintiff must plead "that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general." *Kaucher v. County of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006). The relationship need not relate directly to a specific plaintiff and may relate to an "identifiable and discreet class of persons subject to the harm the state allegedly has created." *Morse*, 132 F.3d at 914. The ultimate test is one of foreseeability. *Id.* However, "[w]hat is clear is that a member of the general public may not qualify." *Id.* at 913.

The plaintiff's complaint and proposed amended complaint allege that "[a]s a resident of Ross Township in attendance at the Supervisor's public meeting of August 5, 2013, Plaintiff's Decedent, James Vincent LaGuardia, was a member of a discreet class of persons made vulnerable to the enhanced risk of bodily injury, death and psychological trauma caused by the Defendants' actions." (Doc. 1, at ¶47; Doc. 55-1, at ¶52). The plaintiff, in her brief in support of the motion for reconsideration, suggests that Mr. LaGuardia was a member of a class of persons comprised of those attending the August 5, 2013 Ross Township meeting and that he was a foreseeable victim. That meeting, however, was open to the general public. The plaintiff recognizes as much when describing Mr. LaGuardia "[a]s a resident of Ross Township in

attendance at the Supervisor's *public* meeting of August 5, 2013." (*Id.*) (emphasis added).

None of the evidence offered by the plaintiff suggests that the August 5, 2013 meeting was limited to particular persons. Nothing in the evidence gives rise to an inference that the particular meeting held on August 5, 2013 was a known target by Newell, therein making those in attendance at *that* particular meeting foreseeable victims. Newell might have "snapped" at any moment in time based on the allegations in the plaintiff's complaint and proposed amended complaint. Newell's threats, as shown by the sum total of the plaintiff's evidence, were primarily directed at the Ross Township Supervisors, Solicitor Dunn, Sheriff Martin, and, possibly, code enforcement officer John Kochis and sheriff deputies serving Newell with papers. There was nothing unusual about the August 5, 2013 meeting. Newell was not invited to attend, nor was he a scheduled topic of discussion. In addition, threats or indications that "people," more generally, would die, due to the township's actions does not, in itself, form a discrete, identifiable class. (Doc. 1, at ¶¶28, 38; Doc. 55-1, at ¶¶32, 43).

The plaintiff's bare legal conclusion that her husband was part of a discrete class of persons subject to harm is insufficient to satisfy the third prong of the state-created danger exception to *DeShaney* and is insufficient to survive a motion to dismiss. *See Phillips*, 515 F.3d at 231 ("more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required to state a plausible claim). Thus, even under the most liberal reading of the complaint, the plaintiff is unable to adequately plead all of the elements of a valid Section 1983 claim. Any amendment would be futile as attendance at the August 5, 2013, was, by definition, open to the general public. Thus, even if the court were to conclude that the quantum of additional evidence makes the plaintiff's Section 1983 more plausible under the first, second, and fourth prong of the state-created danger theory, the claim would still fail under the third prong. No amendment can cure this deficiency.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's motion for reconsideration of the court's August 29, 2016 decision is **DENIED**. The plaintiff has failed to provide any additional evidence that would alter the court's underlying conclusion as provided in the court's August 29, 2016 Memorandum and Order granting the defendants' motions to dismiss and denying the plaintiff's request to amend her complaint. Accordingly, the judgment shall stand. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: November 10, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1475-02.wpd